# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**BRENDA HARRIS,**

    **Plaintiff,**

**v.**                                                                                                                          Case No. 8:08-cv-1425-T-TBM

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

    **Defendant.**
_____/

## O R D E R

The Plaintiff seeks judicial review of the denial of her claims for Social Security disability benefits and Supplemental Security Income payments. For the reasons set out herein, the decision is affirmed.

### I.

Plaintiff was forty-five years old at the time of her administrative hearing in October 2007. She stands 5', 7" tall and weighed 211 pounds, up from her average of 180 pounds. Plaintiff has a high school education and some vocational training in business. Her past relevant work was as a shift supervisor/assistant manager for Kentucky Fried Chicken and a housekeeper at hotels. Plaintiff filed protective applications for disability benefits and Supplemental Security Income payments in March 2005, alleging disability as of September

5, 2002, by reason of diabetes, depression, high cholesterol, and pain in her back, neck, and right shoulder. The Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in her own behalf. Additionally, a vocational expert was called by the ALJ.

In essence, Plaintiff claimed she was unable to work due to diabetes and problems with her shoulder and back. Plaintiff testified that she was in a motor vehicle accident in 2004 and injured her right shoulder (Plaintiff is right-handed). Plaintiff stated she has lost strength in the shoulder, it gives out a lot, and it hurts when she raises her arm above her head. She has had cortisone shots in her shoulder, which helped initially, but the pain returned in an hour or two. She also has had to keep her arm in a sling. With regards to her back, Plaintiff said she was told that she has scoliosis and her back hurts when she walks. As for her diabetes, Plaintiff stated that she takes insulin twice a day as well as oral medication. Despite the medication, it is not well controlled; her blood sugar runs between 200 and 300 and has for the last 4 to 5 years. By her account, it causes dizziness and affects her vision. She now has to wear eyeglasses and her hands swell and her fingertips tingle. She has lost strength in both hands. She also has numbness in her feet, tingling in her toes, and aches in her legs. Plaintiff also takes medication for her cholesterol. She used to take medication for high blood pressure but stopped because she could not afford it. At the time of the hearing, Plaintiff weighed 211 pounds. According to her, she has weighed close to that since approximately 2005. Plaintiff said that her doctor put her on a diet and she had to go to nutrition classes.

Plaintiff testified she also suffers from depression. When asked to describe it, she said that she gets "snappy" and irritable, feels suicidal, cries for no apparent reason, and wants to be alone. According to Plaintiff, she has had these feeling for 27 years. She is not currently in counseling but is prescribed Effexor. She used to take Paxil about 10 or 11 years ago, which was prescribed by her general practitioner.

Regarding her physical abilities, Plaintiff stated that she can lift about 10 pounds but not repetitively. She does not try to lift more due to her back. Plaintiff said that she can stand for about 20 minutes and sit for about 30 minutes. After sitting for that long, she must get up and walk or do something. Although her doctor wants her to walk, she does not walk far, about a block or so, because she gets aches and numbness in her feet and legs.

Plaintiff testified that she spends her days helping at her grandson's school making copies or volunteering. She does this for about 5 hours a week. Other than that, Plaintiff said she spends most of her day lying down, sitting, and standing. Her most comfortable way to sit is on the sofa with pillows behind her back and her feet up; her feet tend to swell if they hang down too long and her doctor told her to keep her feet raised. She occasionally washes dishes but she stopped cooking everyday because she drops things when her hands get numb. Her daughter does the cleaning and vacuuming. She has a driver's license and drives only short distances, such as 5 to 10 miles round trip. As for her personal needs, Plaintiff stated she has difficulty getting in and out of the tub and she has to sit down when getting dressed. She often wears clothes that she can step into so that she does not have to lift her arm. She does not sleep well at night. Plaintiff said that she only sleeps for about 2 hours because of the aches in her legs and trouble getting comfortable due to her back.

Plaintiff last worked in September 2002. She was a shift supervisor at Kentucky Fried Chicken. She was fired when she did not show up for work on Labor Day. According to Plaintiff, she did not have transportation. Thereafter, Plaintiff did not collect unemployment but she did seek job assistance from the unemployment office. By her account, they never called her. She has not been able to find work on the computer because most of the jobs advertised require credit and/or background checks; she has poor credit and an arrest for domestic violence. When asked whether she could do the shift supervisor work again, Plaintiff testified that she did not think so because she has difficulty dealing with customers and she could not do the lifting involved (picking up 50 pounds of chicken). Plaintiff also testified that she did not think she could perform her other past work as a motel housekeeper due to the problems she has with her lower back and shoulder. When asked what she did from her alleged onset of disability in September 2002 to September 2004 when she had her accident, Plaintiff testified that she was caring for her mother. (R. 377-404).

Irvin Roth, Ph.D., a vocational expert ("VE"), testified next. The VE identified Plaintiff's past work in housekeeping as unskilled, light exertional work and her past work as an assistant manager in fast food as semiskilled, light exertional work. Upon a hypothetical which, in addition to Plaintiff's age, education, and work experience, assumed an individual capable of performing light exertional work with occasional limitations for climbing, balancing on uneven surfaces, stooping, kneeling, crouching and crawling and frequent limitations for reaching and pulling over head with the right upper extremity, the VE testified that Plaintiff could perform her past work as an assistant manager. Upon the assumption of an individual limited to sedentary work with the ability to walk for 1 block at a time, stand for

4

about 20 minutes at a time, and sit for about 30 minutes at a time, with the same limitation in over head reaching, the VE indicated that no past work would be available but other work such as assembler/inspector type jobs and information clerks would be available in the national and local economy. Upon questioning by Plaintiff's attorney, the VE opined that if reaching was limited in all directions it would affect the ability to perform the assembler/inspector type jobs. The VE also opined that those jobs would not be available if Plaintiff's testimony was credited with respect to having difficulty with the general public. Lastly, the VE indicated that an individual in those jobs would, at most, be permitted to miss only a day to a day and a quarter unscheduled days of work per month, and the position of fast food worker does not allow for a sit/stand option. (R. 405-15).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary. Pertinent to Plaintiff's claim for disability benefits is her date last insured of December 31, 2007.

By his decision of February 22, 2008, the ALJ determined that while Plaintiff has severe impairments related to post traumatic right shoulder bursitis, lumbar and cervical spine sprain, and diabetes mellitus, type II, she nonetheless had the residual functional capacity to perform up to light levels of work with the ability to occasionally climb, balance, stoop, kneel, crouch, and crawl, and frequently reach and pull overhead with her right upper extremity. Upon this finding, the ALJ concluded that Plaintiff was able to perform her past work as an assistant fast food store manager. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 12-19). The Appeals Council denied Plaintiff's request for review.

II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are

6

supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises two claims on this appeal.[1] As stated by the Plaintiff, they are as follows:

(1) The Commissioner Erred in Failing to Fully and Adequately Consider all of the Plaintiff's Impairing Conditions, Either Separately or in Combination; and

(2) The Commissioner Erred in Failing to Give Appropriate Credit to the Testimony of the Plaintiff, Without Sufficient Cause.

By her first claim, Plaintiff faults the ALJ for failing to address obesity. In particular, Plaintiff contends the ALJ should have considered (1) whether or not her obesity constituted a severe impairment at step two of the sequential evaluation, and (2) the combined

---

[1]Plaintiff's assertion that the Commissioner failed to adequately weigh the substantial evidence, *see* (Doc. 22 at 2, 12), is not a separate claim in and of itself.

effect of obesity with her other impairments at the remaining steps of the evaluation process. Plaintiff urges that the ALJ's failure to do so affected his ability to adequately assess her credibility and determine her functional limitations. In support, Plaintiff refers to the medical records which reflect that she weighed 200-plus pounds (at a height of 5'6"), which translates to a body mass index ("BMI") of 32.2 and is considered obese, as well as to the "testimonial evidence." Given these errors, Plaintiff contends that a remand is warranted for further consideration of her obesity. (Doc. 22 at 6-8).

The Commissioner counters that the ALJ's failure to address obesity does not constitute reversible error. He acknowledges that Social Security Ruling ("SSR") 02-1p requires the ALJ to consider the effect of obesity and that Plaintiff likely suffered from obesity from 2004 through the date of the decision. He contends, however, that Plaintiff failed to provide more substantial evidence of such, particularly evidence suggesting that it impacted her functional ability or resulted in greater limitations than those determined by the ALJ. As for the ALJ's failure to address obesity at certain steps of the evaluation process, the Commissioner asserts that no error occurred at step two because the ALJ found that Plaintiff had several severe impairments and proceeded through the remaining steps of the evaluation. Lastly, the Commissioner contends that even though the ALJ did not list obesity as a severe impairment, he was aware of Plaintiff's obesity argument because Plaintiff's attorney addressed it in a pre-hearing submission. (Doc. 23 at 4-6).

The Social Security Regulations set forth a five-step sequential evaluation process the Commissioner must follow in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). The claimant bears the burden of establishing a *prima facie* case of disability at steps one through four. *See Phillips v. Barnhart*, 357 F.3d 1232,

1241 n.10 (11th Cir. 2004). Step one requires the claimant to demonstrate that she is not presently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the claimant must show that she has a medically severe impairment or combination of impairments. *Id.* at §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, if a claimant can show that her impairment meets or is equivalent to a listed impairment, she is presumed to be disabled and entitled to benefits. *Id.* at §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant is unable to demonstrate such, step four requires the claimant to show that her impairment or combination of impairments prevents her from performing her past work. *Id.* at §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five. *Phillips*, 357 F.3d at 1241, n.10. At step five, the Commissioner must show that the claimant retains the residual functional capacity to perform work in the national economy, given her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary. 20 C.F.R. §§ 404.1520, 416.920. Here, the ALJ concluded the evaluation at step four after finding that Plaintiff was able to perform past work and therefore not disabled.

Unfortunately, the decision does not reveal what consideration, if any, the ALJ gave to Plaintiff's weight. Nevertheless, after consideration of the medical record and the testimony from the evidentiary hearing, I am unable to conclude that such constitutes reversible error under the particular circumstances that exist in this case.

Plaintiff is correct that the ALJ is required to consider each impairment alleged, as well as the combined effect of all a claimant's impairments. *See* 42 U.S.C. § 423(d)(2)(B);

9

*Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986). Plaintiff is also correct that there is no mention of obesity in the ALJ's decision. But the starting point in the analysis of this claim is that Plaintiff did not allege disability due to obesity. Although counsel urged in a pre-hearing memorandum submitted to the ALJ that Plaintiff became disabled due to limitations caused by a combination of exertional and non-exertional impairments, including among others, "obesity with about a 32.1 BMI (standing 5'7" and weighing about 205 pounds fairly consistently)," (R. 78), Plaintiff made no claim in her applications or at the hearing that her weight rendered her disabled. While counsel contends that "testimonial evidence" supports this claim, the only testimony pertaining to obesity consisted of the following exchange between counsel and Plaintiff:

> Counsel: And finally, this is an area that I hate to mention because I have the same issue – about how much to you weigh right now?
>
> Plaintiff: 211 pounds.
>
> Counsel: And in the last few years, has, has that been about your average?
>
> Plaintiff: No, my average was 180.
>
> Counsel: When was the last time you were 180?
>
> Plaintiff: About three years – three, four years ago.
>
> Counsel: And then after that?
>
> Plaintiff: And I just continually gained.
>
> Counsel: Okay. I've seen it being as far back as 2005, I believe, 205 pounds.
>
> Plaintiff: Yeah.
>
> Counsel: It stayed around there since?

>           Plaintiff:      Yeah.
>
>           Counsel:        Okay. And your doctor has dealt with that as well?
>
>           Plaintiff:      Yes, they put me on – it's – I have to diet myself and I go to nutrition classes.

(R. 400-01). While counsel conducted the brief inquiry above with respect to Plaintiff's weight, he failed to ask the import, if any, that her weight had on her functional capacity.[2] Significantly, Plaintiff did not testify that her weight caused her pain to worsen or further complicated her ability to perform any physical activities. Nor does she assert or demonstrate that now. Even though the ALJ was bound to consider her impairments to the extent that they existed, if there was a failure to develop the record in this regard, it was a shared failure. More importantly, the medical record suggests that even if there was a complete failure to consider Plaintiff's weight, the error was entirely harmless. My review indicates that the record evidence of the same is limited to a few notations reflecting Plaintiff's weight recorded during physical examinations. *See, e.g.* (R. 171, 173-74, 176, 184, 188, 190, 193). No doctors, examining or otherwise, noted obesity related concerns or limitations. Plaintiff points to none on this appeal.

With regards to Plaintiff's step-specific arguments, I am again unable to conclude that the ALJ's failure to address obesity results in reversible error. While Plaintiff is correct that the ALJ did not address whether obesity constituted a severe impairment at step two of the evaluation, by implication, he determined that it did not. Nonetheless, any error at this step is not reversible because the ALJ found that Plaintiff suffered from other severe impairments, namely, post traumatic right shoulder bursitis, lumbar and cervical spine sprain,

---

[2] Notably, Plaintiff's counsel on appeal also represented her at the administrative hearing.

11

and diabetes mellitus, type II. (R. 13). *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (noting that, ". . . the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two."). Next, there is absolutely no record support for finding that Plaintiff's impairments or combination thereof met or equaled that of a listed impairment at step three, and Plaintiff does not argue or demonstrate otherwise. As for the ALJ's findings at step four, it is worth noting that Plaintiff does not specifically challenge the ALJ's assessment of her residual functional capacity. Nor does she assert particular obesity-related functional limitations that the ALJ should have considered but did not. While Plaintiff suggests the ALJ may have more fully credited some of her subjective complaints had obesity been considered, she does not point to any particular allegation that the ALJ wrongly discounted. Additionally, as indicated above, Plaintiff did not testify that her pain complaints or ability to perform daily activities were impacted by excess weight. Consequently, I find that the ALJ's failure to address obesity throughout the remaining evaluation does not result in reversible error.[3] *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); Fed. R. Civ. P. 61. For the reasons set forth above, Plaintiff is not entitled to relief on this claim.

---

[3] As for Plaintiff's citation to SSR 02-1p, it does minimally support her claim. On the other hand, it is worth noting that the ruling also recognizes that obesity does not correlate with any specific degree of functional loss and it may or may not increase the severity or functional limitations of the other impairments. *See* SSR 02-1p, 2000 WL 628049, at *2, 6 (S.S.A.). In this case, Plaintiff has failed to demonstrate that it did.

By her second claim, Plaintiff argues that the ALJ's reasons for discounting her subjection allegations are insufficient. By this argument, Plaintiff generally challenges the ALJ's determination that her testimony regarding her symptoms and restrictions was "very exaggerated" because he failed to provide sufficient reasons for determining as such. In particular, Plaintiff points to the ALJ's failure to address obesity, which may have exacerbated her other conditions and thus supported her allegations, and the ALJ's improper reliance on "sit and squirm" jurisprudence and her ability to engage in a wide range of activities of daily living. In light of these errors, Plaintiff urges that her testimony be accepted as true and the case reversed and remanded for an award of benefits. In the alternative, Plaintiff urges a remand for full and adequate development and proper consideration of her assertions is warranted. (Doc. 22 at 8-11).

In response, the Commissioner contends that the ALJ properly discounted Plaintiff's subjective complaints of pain and other limitations. According to the Commissioner, the ALJ correctly found that Plaintiff's impairments could be expected to produce the symptoms alleged but not to the extent claimed and provided adequate reasons for so finding. Thus, the Commissioner contends it was proper for the ALJ to rely on Plaintiff's demeanor at the hearing and activities of daily living when assessing the credibility of her subjective complaints because those were not the sole reasons provided by the ALJ. He contends further that the ALJ's other reasons are supported by the record. (Doc. 23 at 7-9).

In this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be evidence of an underlying

13

medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Id.*; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones v. Dep't of Health & Human Servs.*, 941 .2d 1529, 1532 (11th Cir. 1991). The failure of the ALJ to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See Hale*, 831 F.2d at 1012.

As the decision reflects, the ALJ credited Plaintiff with impairments which could reasonably be expected to produce her symptoms but not to the extent claimed. (R. 13, 16). Under the applicable standard, an ALJ may discount the subjective testimony in this manner on explicit and adequate findings. Here, after fairly summarizing the Plaintiff's subjective testimony (R. 16), the ALJ set forth his reasons for rejecting the same to the extent that

14

Plaintiff claimed it render her disabled.[4] Principally, the ALJ relied upon the medical record in doing so. Thus, he noted that the diagnostic studies and physical examinations did not support Plaintiff's allegations of disabling symptoms. In particular, the ALJ noted: (1) while a scan of the cervical spine showed anterior spurring at C5-6, scans of the thoracic and lumbar spines were normal; (2) there was no evidence of disc herniation, disc bulge, or other neural foraminal narrowing; (3) a scan of the right shoulder showed only some tendinopathy and degenerative changes; (4) while exams generally showed some tenderness and decreased range of motion over the cervical and lumbar areas of the spine and the right shoulder, Plaintiff reported improvement with injections to the shoulder; (5) subsequent exams showed no pain and full range of motion over the shoulder; (6) while decreased strength in the right upper extremity was revealed on exam, strength was otherwise 5/5, sensation was intact, deep tendon reflexes were equal and symmetric throughout, straight leg raising was negative, and gait was repeatedly noted to be normal; and (7) although Plaintiff's diabetes was not optimally controlled, there was no evidence of diabetic complications or end organ damage, and there was no evidence to support Plaintiff's allegations of pain and tingling in her feet. (R. 17). For the most part, these reasons are rational and supported by the record.[5] *See, e.g.* (R. 262-76, 352-57). While the medical records undoubtedly support Plaintiff's allegation

---

[4]Plaintiff does not appear to challenge the ALJ's application of this circuit's pain standard. In any event, the ALJ in this case was clearly aware of the applicable standard as he referenced the pertinent regulations and rulings (R. 15), and the decision reflects a correct application of that standard. *See Wilson,* 284 F.3d at 1226.

[5]The ALJ may have understated the severity of Plaintiff's right shoulder impairment, however, Plaintiff does not establish that it resulted in restrictions beyond that which the ALJ determined.

15

that she suffers from diabetes and shoulder and back pain, nothing in the reports of the treating or examining doctors support the disabling pain complaints.

The ALJ also provided non-medical reasons for discounting Plaintiff's allegations of disabling symptoms. Thus, he noted that Plaintiff's alleged onset date corresponded to the time she was fired from a job due to transportation problems, not disability, and that she admitted she filed for unemployment benefits during that time and was able to care for her mother. Similarly, he noted that Plaintiff's impairments were not severe until her automobile accident in September 2004, two years after she claimed she was disabled. (R. 16). He also cited to Plaintiff's own testimony concerning what she was capable of doing and her relatively active daily regimen. (R. 17). Contrary to Plaintiff's complaint, the regulations specifically call for the ALJ to consider daily activities in assessing pain complaints. 20 C.F.R. §§ 404.1529(c), 416.929(c). In addition, as indicated by Plaintiff, the ALJ commented on her demeanor at the hearing. Thus, the ALJ observed:

> Further, the claimant remained sitting during the approximately one hour long hearing without any significant difficulty observed from a lay perspective, although she was rubbing her right shoulder with her left hand. At the end of the hearing, the claimant was alert and aware of everything that went on at the hearing. The claimant understood and answered all questions appropriately. In sum, the claimant's alleged symptoms and restrictions were very exaggerated. These are not supported by the medical signs and laboratory findings to the extent alleged.

(R. 17). These observations are not wholly improper, especially where, as here, such reference was just one of several reasons offered by the ALJ for concluding that Plaintiff was overstating her functional loss. *See Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir. 1985).

To the extent Plaintiff suggests that the ALJ placed too much emphasis on one or two aspects of the record to the exclusion of the remaining evidence, the decision supports a contrary finding. In sum, the totality of the reasons provided by ALJ are adequately supported.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

**Done and Ordered** at Tampa, Florida, this 31st day of August 2009.

_____
THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record